***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Carrier-Defendant was the carrier on the risk on September 1, 2002.
3. An employment relationship existed between Employee-Plaintiff and Employer-Defendant on September 1, 2002.
4. Plaintiff's average wage as calculated by a Form 22 is $423.29, which yields a compensation rate of $283.90 per week.
5. Plaintiff alleges to have sustained a compensable injury by accident on or about September 1, 2002.
 ***********
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by Rolling Hills Country Club as a golf course maintenance worker, and had worked there for eight years.
2. On September 1, 2002, Plaintiff experienced a sudden onset of pain in her low back, which radiated down her right leg when she lifted a sand bucket weighing approximately seventy-five pounds at the tee box on hole number sixteen.
3. Within ten minutes of the accident, Frank Hancock, a co-worker, saw Plaintiff sitting at the tee box crying and when he asked what had happened, Plaintiff told him that she had hurt her back lifting a bucket of sand that she was moving in order for him to mow the tee box.
4. Approximately one hour after the injury, Plaintiff and Mr. Hancock told Greg McDaniel, superintendent of the golf course, about the accident and Mr. McDaniel told Mr. Hancock to lift the sand buckets from that point onward.
5. Despite ongoing back pain, Plaintiff continued to work, hoping that she would get better. The pain, however, became gradually worse. Plaintiff saw Dr. A. P. Kitchin, her family physician, on September 24, 2002.
6. Plaintiff presented to Dr. Kitchin on September 24, 2002 with complaints of experiencing progressive right lumbosacral back and right hip pain, which radiated down the right leg, for ten days.
7. On December 13, 2002, Dr. Kitchin referred Plaintiff to Dr. Seth Jaffe due to ongoing low back pain with radiculopathy. Dr. Jaffe ordered an MRI, which was later performed on December 30, 2002, and placed Plaintiff on light-duty work restrictions and recommended physical therapy and a back brace to be used while at work. The results of the MRI showed that Plaintiff had bulging discs at L3-4, L4-5 and L5-S1.
8. On April 30, 2003, Dr. Jaffe prescribed chiropractic treatment for Plaintiff for pain relief. Plaintiff presented to Dr. George Ring for chiropractic treatment on May 6, 2003.
9. Plaintiff continued to work in pain although on a modified, light-duty basis until she actually went out of work entirely on or about May 12, 2003 upon recommendation of Dr. Ring. The employer had previously accommodated Plaintiff by giving her assistance with the heavier parts of her job.
10. On or about May 28, 2003, Greg McDaniel, superintendent of the golf course at Rolling Hills Country Club wrote a letter confirming that Plaintiff had been having back pain reported to him since September 2002.
11. Plaintiff continued to treat with Dr. Jaffe and Dr. Ring until June 27, 2003 when Dr. Jaffe referred Plaintiff to Charlotte Orthopedic Specialists due to chronic low back pain, disc pathology and tingling in both legs.
12. On July 23, 2003, Plaintiff was seen by Dr. Patricia Shannon, who reviewed the MRI and determined that Plaintiff suffered from the following: an internal disc derangement with an annular tear at L5-S1, radiculitis in the right lower extremity secondary to the internal disc derangement and annular tear, and degenerative disc disease of the lumbar spine with annular bulges at L3-4, L4-5, and L5-S1.
13. Dr. Shannon recommended a lumbar discogram, which was performed by Dr. Ronald VanDerNoord on August 20, 2003. Dr. VanDerNoord opined that Plaintiff had severe degenerative changes at L3-4 and L4-5 and also had severe degenerative changes at L5-S1. He further opined and the Full Commission finds that it did appear that the L5-S1 disc was contributing to Plaintiff's low back and right lower extremity symptoms, likely in the form of a complete annular tear with a chemical radiculitis. Dr. VanDerNoord felt that Plaintiff might benefit by having an IDET (intradiscal electothermal annuloplasty) at the L5-S1 level.
14. Dr. VanDerNoord testified that the annular tear at L5-S1 had allowed a leaking of phospholipase A2 and that a leaking of this substance could cause chemical irritation of the nerve or discogenic low back pain. Dr. VanDerNoord further testified that the leaking of the phospholipase A2 would likely cause irritation of both back and leg pain in an individual.
15. Plaintiff is an appropriate candidate for the IDET procedure. Plaintiff will have permanent restrictions unless she obtains some type of treatment such as that recommended.
16. When Dr. VanDerNoord was asked, "So, if the Commission should find all of those things that I discussed with you before as being true and assuming that she didn't have any problems with her back of any significant degree before, would that indicate to you that lifting a seventy-five pound bucket of sand on September 1, 2002, either caused or aggravated an annular tear," Dr. VanDerNoord replied, "It would be more likely than not."
17. Plaintiff did not cite a specific traumatic incident to her doctors when she gave them a medical history of the incident; however, her failure to mention the lifting of the sand bucket to her doctors is outweighed by the testimony of Frank Hancock, which corroborated plaintiff's testimony concerning how her injury occurred.
18. Frank Hancock as well as the Plaintiff are found to be credible witnesses. In his deposition, Dr. VanDerNoord testified that he recalled that Dr. Shannon felt Plaintiff was believable. In addition, the discogram established that Plaintiff had experienced an annular tear.
19. Although the Plaintiff has obtained her GED, she was described by Dr. Kitchin as a "poor historian." Plaintiff testified that she could never forget the day she hurt her back. She focused on her back pain for months and was only able to trace the origin of said pain after talking to her co-worker, Frank Hancock.
20. Plaintiff has proven by the greater weight of the evidence that she suffered a compensable injury by accident to her low back on September 1, 2002, resulting from lifting a seventy-five pound bucket of sand, and that the injury arose out of and in the course of her employment. Dr. VanDerNoord opined and the Full Commission finds that lifting the seventy-five pound bucket of sand is the type of activity that could cause an annular tear and that, more likely than not, this lifting incident either caused or aggravated the annular tear. Dr. VanDerNoord further opined and the Full Commission finds that the progression of the annular tear was consistent with what he would have expected, as it was painful; and, as plaintiff continued to work, it worsened over time until it became disabling.
21. Plaintiff has not reached maximum medical improvement.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff experienced a compensable injury to her back on September 1, 2002, arising out of and in the course of her employment as a direct result of a specific traumatic incident of the work assigned by defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of said injury, Plaintiff has been temporarily totally disabled and is therefore entitled to temporary total disability compensation at the rate of $283.90 per week from May 12, 2003 through the date of hearing and continuing. N.C. Gen. Stat. § 97-29.
3. The medical treatment received by Plaintiff as a result of her compensable injury by accident, including her chiropractic treatment was necessary to provide Plaintiff relief, effect a cure and tended to lessen Plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
4. Plaintiff is entitled to evaluations by Dr. Shannon and Dr. VanDerNoord, including the IDET procedure, to establish the necessary treatment and later to determine the degree of permanent impairment and permanent restrictions.
5. Depending upon the outcome of the evaluations with regards to permanent impairment and permanent restrictions, Plaintiff is entitled to a vocational evaluation.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff is entitled to receive and Defendants shall pay weekly temporary total disability benefits at the rate of $283.90 from May 12, 2003 and ongoing until further order of the Commission. The compensation that has accrued shall be paid to Plaintiff in a lump sum, subject to the attorney fee hereinafter approved.
2. Dr. Shannon and Dr. VanDerNoord are designated as authorized treating physicians, and Defendants shall pay all past and future medical bills related to treatment of Plaintiff as a result of her compensable injury.
3. Plaintiff is entitled to evaluations by Dr. Shannon and Dr. VanDerNoord, including the IDET procedure, to establish the necessary treatment and later to determine the degree of permanent impairment and permanent restrictions.
4. Depending upon the outcome of the evaluations with regards to permanent impairment and permanent restrictions, Plaintiff is entitled to a vocational evaluation.
5. Plaintiff's attorney is entitled to a fee of twenty-five (25%) percent of the accrued compensation awarded herein and every fourth benefits check thereafter, which amount shall be deducted from the sum due Plaintiff and paid directly to Mr. Poisson.
6. Defendants shall pay the costs.
This the ___ day of August 2005.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN